**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JABBAR WALLACE, | |
| Petitioner, | CIVIL ACTION NO. 3:14-CV-01424 |
| v. | (JUDGE CAPUTO) |
| SUPERINTENDENT OF SCI HUNTINGDON, | (MAGISTRATE JUDGE SCHWAB) |
| Respondent. | |

## **MEMORANDUM**

Presently before this Court is Magistrate Judge Schwab's Report and Recommendation ("R&R") (Doc. 21) to the Petition for Writ of Habeas Corpus filed by Petitioner Jabbar Wallace ("Wallace"). Because Wallace's claims do not satisfy the standard for relief under 28 U.S.C. §2254(d), his Petition for a Writ of Habeas Corpus will be denied. Further, a certificate of appealability will not issue because reasonable jurists could not disagree about the validity of Wallace's claims.

### **I. Background**

On March 25, 2009 Jabbar Wallace was convicted of third-degree murder in the Court of Common Pleas of Luzerne County. The facts underlying his conviction were concisely set forth by the Superior Court of Pennsylvania:

> At some point late on December 14, 2007, Eric Cusaac and a female were talking and drinking together in a certain bar. [Wallace] approached the female and began speaking to her about a car accident in which she had hit his vehicle. Cusaac and [Wallace] exchanged some not entirely friendly words, although it does not appear the two had any type of significant argument or altercation.
>
> Later that night, [Wallace] was present at another establishment, the

> Glass Bar. [Wallace] entered the men's room of the bar along with his friend Cameron Little. Several other men, including Cusaac, also came to be in the bathroom. Cusaac, who had stood atop a toilet, stepped down and approached [Wallace]. [Wallace] then shot Cusaac in the abdominal area and in the head. Cusaac died from his wounds. [Wallace] was later charged with homicide.

*Commonwealth v. Wallace*, 1117 MDA 2009, slip op. at 1-2 (Pa. Super Ct. Oct. 21, 2010) (submitted as Doc. 20, at 169). Notably, jurors rejected Wallace's position that he acted in self-defense. Wallace was sentenced to sixteen to thirty-two years imprisonment.

Wallace appealed both his sentence and conviction after the trial court denied his motion for a new trial and his motion to modify his sentence. On appeal Wallace argued that the jury verdict was against the weight of the evidence presented at trial and that the court abused its discretion in denying his request for a mistrial after the district attorney elicited testimony that implicated his post-arrest silence. The Superior Court affirmed Wallace's conviction and sentence, *Commonwealth v. Wallace*, 1117 MDA 2009, slip op. (Pa. Super. Ct. Oct. 21, 2009), the Supreme Court of Pennsylvania denied Wallace's petition for allowance of appeal, *Commonwealth v. Wallace*, 17 A.3d 1254 (Pa. 2011) (Table), and the United States Supreme Court denied Wallace's Petition for Writ of Certiorari. *Wallace v. Pennsylvania*, 565 U.S. 845 (2011).

Having failed in his efforts on direct appeal, Wallace turned to the collateral proceedings available to him pursuant to the Post-Conviction Relief Act ("PCRA"). On August 5, 2011 Wallace filed a PCRA petition raising three claims: (1) trial counsel was ineffective when he failed to object as the Commonwealth elicited testimony from

a forensic pathologist about the findings of a toxicologist when the toxicologist was not available for cross-examination; (2) trial counsel was ineffective by failing to call character witnesses; and (3) the state court erred by failing to apply Pennsylvania's "Stand Your Ground" Amendment retroactively during his direct appeal. *See Commonwealth v. Wallace*, No. 241 MDA 2013, 2014 WL 10988483, at *1 (Pa. Super. Ct. Jan. 29, 2014); (Doc. 13, at 60, 63, 67.)

A hearing regarding Wallace's PCRA claims was held on June 26, 2012. (Doc. 13, at 75.) There, Wallace represented himself. Notably, while the PCRA court was prepared to provide Wallace counsel, he refused and proceeded to represent himself *pro se*. (Doc. 13, at 76-77). He called no witnesses in support of his claim, and instead relied solely on his own testimony. (Doc. 13, at 82). The Commonwealth elicited testimony from Wallace's trail counsel, Mr. William Ruzzo ("Ruzzo"). Ruzzo confirmed that he did not call any character witnesses at Wallace's trial, and noted that he did not recall ever receiving a list of such witnesses from Wallace. (Doc. 13, at 80). Additionally, Ruzzo explained that one reason he may not have called a character witness was because he feared that presenting such a witness would allow the prosecutor to elicit testimony about Wallace's prior resisting-arrest conviction. (*Id.*) Absent a witness testifying about Wallace's good character, Ruzzo believed the prior conviction would not be admitted. (*Id.*) Moreover, Ruzzo explained that he would never have called Wallace's mother as a witness because she was involved with destroying or hiding evidence after the murder. (*Id.*) While Wallace did cross-examine Ruzzo during this hearing, no testimony was elicited regarding Wallace's other claims.[1] (Doc. 13, at 81).

---

[1] At the PCRA Judge's urging, Wallace repeated his claim that Ruzzo was ineffective due to a failure to object to testimony which implicated the

3

The PCRA court denied Wallace's petition and Wallace subsequently appealed. However, the Superior Court, yet again, affirmed Wallace's conviction and sentence. *Wallace*, 2014 WL 10988483, at *1.

On July 24, 2014, Wallace filed the instant federal habeas petition pursuant to 28 U.S.C. § 2254(d). (Doc. 1.) Wallace raises five claims in his Petition: (1) trial counsel was ineffective when he failed to object when the Commonwealth elicited testimony from a forensic pathologist about the findings of a toxocologist in violation of the Sixth Amendment's Confrontation Clause; (2) trial counsel was ineffective by failing to call character witnesses; (3) the state courts erred in failing to retroactively apply Pennsylvania's "Stand Your Ground" Amendment to Wallace's conduct; (4) the trial court erred by not declaring a mistrial after the prosecutor referenced Wallace's post-arrest silence; and (5) the jury verdict was against the weight of the evidence. (Doc. 1).

Magistrate Judge Schwab conducted an initial review of Wallace's Petition and authored an R&R dated May 20, 2016 in which Magistrate Judge Schwab recommends this Court deny Wallace's Petition for Writ of Habeas Corpus. Wallace timely[2] filed objections in response the Magistrate Judge Schwab's R&R.

## II. Legal Standard

**A.     Report and Recommendation**

Where objections to a magistrate judge's R&R are filed, the Court must conduct a

---

Sixth Amendment's Confrontation Clause. But, again, no testimony or evidence was offered to suggest he was prejudiced by Ruzzo's failure to object.

[2]   This Court granted Wallace leave to allow him the opportunity to file an objection to the R&R *nunc pro tunc*. Thus, Wallace's objections filed on July 14, 2016 were timely.

4

*de novo* review of the contested portions. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c)). This only applies to the extent that a party's objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). Conversely, for those sections of the R&R to which no objection is made, the court should "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *See Univac Dental Co. V. Dentsply Int'l, Inc.*, 702 F. Supp. 2d 465, 469 (M.D. Pa. 2010) (citing *Henderson v. Carlson*, 812 F.2d 874, 878 (3d Cir. 1987)); *see also* FED. R. CIV. P. 72(b)(1) advisory committee's notes.

In conducting a *de novo* review, a court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

## B. 28 U.S.C. §2254

A habeas corpus petition pursuant to 28 U.S.C. §2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of her confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Rather, federal habeas review is restricted to

claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67-68; *see also Johnson v. Rosemeyer*, 117 F.3d 104, 109 (3d Cir. 1997).

### III. Discussion

**A.   Ineffective Assistance of Counsel**

The Sixth Amendment guarantees the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Due to the existence of such a right, a criminal defendant will have his conviction overturned if: (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Id.* at 687; *see also Wiggins v. Smith*, 539 U.S. 510, 521 (2003). An attorney's performance is deficient when it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The benchmark for this objective standard "must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686 (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). A court must indulge a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;" that is, the petitioner must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." *Id.* at 688-89, 690-92. To show prejudice, the defendant must show that there was a reasonable probability that but for counsel's hapless performance, the outcome of the proceeding would have been different. *Id.* at 694. The prejudice standard "is not a stringent one;" it is less demanding than the preponderance standard. *Baker v. Barbo*, 177 F.3d 149 (3d Cir. 1999). Notably, it is the defendant-petitioner's burden to establish both deficient performance and resulting prejudice. *See Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005).

The Third Circuit has repeatedly emphasized the need to address the question of

prejudice first, acting on the assumption that counsel's conduct was deficient, prior to considering whether counsel's performance was deficient. *See, e.g.*, *McAleese v. Mazurkiewicz*, 1 F.3d 159, 170-71 (3d Cir. 1992); *United States v. Fulford*, 825 F.2d 3, 8 (3d Cir. 1987); *see also Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

The relevant "clearly established" federal precedent for an ineffectiveness claim is *Strickland*. Thus, the question before this court is whether the decision of the state court was "contrary to" the *Strickland* standard[3], involved an "unreasonable application" of *Strickland*, or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §2254(d)."Surmounting *Strickland*'s high bar is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under §2254(d) is all the more difficult." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010); *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Here, Wallace asserts that his trial counsel was ineffective because he (1) did not object to questioning that may have implicated the Sixth Amendment's Confrontation Clause, and (2) he did not elicit character testimony from a number of Wallace's family members. Magistrate Judge Schwab recommends denying Wallace's Petition on both grounds as counsel's alleged failings were either the result of trial strategy or did not prejudice Wallace.

---

[3] Under Pennsylvania law, a three-prong test is applied to ineffective assistance of counsel claims. This test is substantively identical to the *Strickland* test. *See, e.g.*, *Commonwealth v. Pierce*, 527 A.2d 973, 975-77 (Pa. 1987). The Third Circuit has held that Pennsylvania's test for assessing ineffective assistance of counsel claims is not contrary to *Strickland*. *See Jacobs*, 395 F.3d at 107 n.9; *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000).

### (1) Failure to Object: Confrontation Clause

First, Wallace claims that his trial counsel, Ruzzo, was ineffective because he failed to object to testimony elicited by the Commonwealth regarding a toxicology report when the toxicologist was not available for cross-examination. Wallace believes this testimony violated the Sixth Amendment's Confrontation Clause. Magistrate Judge Schwab disagreed. Specifically, Magistrate Judge Schwab explained that Wallace had failed to show that prejudice resulted from Ruzzo's failure to object. Because Wallace did fail to demonstrate that he was prejudiced due to Ruzzo's failure to object as required by *Strickland*, his Petition will be denied on this ground.

The Confrontation Clause of the Sixth Amendment generally operates to exclude "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 36 (2004). Testimonial statements are those used "to establish or prove past events potentially relevant to [a] later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). For example, in *Crawford v. Washington* the trial court allowed a statement procured by police from defendant's wife to be read to the jury even though defendant's wife did not testify. 541 U.S. at 36. Since the defendant could not cross-examine the author of the letter–his wife–and the statements made in the letter constituted testimonial statements, inclusion of the letter in the record before the jury violated the Confrontation Clause. *Id.* Of particular relevance here, courts construe forensic reports as testimonial statements subject to scrutiny under the Confrontation Clause. *See, e.g., Melendez-Davis v. Massachusetts*, 557 U.S. 305, 307-311 (2009); *Bullcoming v. New Mexico*, 564 U.S. 647, 652 (2011); *United States v. Hadaway*, 466 Fed. App'x 154, 158 (3d Cir. 2012). In fact, the Supreme Court recently held that an accused has that "right to be confronted with the analyst who [certified a forensic report], unless that analyst is

8

unavailable at trial and the accused had the opportunity, pretrial, to cross-examine that particular scientist." *Bullcoming*, 564 U.S. at 652.

Here, the Commonwealth elicited testimony from Doctor Mary Frances Pascucci, who performed the autopsy on the victim, Mr. Cusaac. Dr. Pascucci was a qualified expert in pathology and she opined that the cause of Mr. Cusaac's death was "multiple gunshot injuries" which was consistent with a finding that the "manner of death was homicide." *Wallace*, 241 2014 WL 10988483, at *5. Dr. Pascucci also testified that she had sent samples of Mr. Cusaac's blood to a laboratory to be tested. The results of that testing indicated that his blood contained nicotine and .284% alcohol. *Id.* On cross-examination, Ruzzo had Dr. Pascucci clarify her opinion to include that the victim's blood alcohol level could have "possibly" led to aggressive behavior. *Id.*

At bottom, Wallace now claims that this discussion should not have occurred because his counsel should have objected to Dr. Pascucci's first mention of the lab results. Wallace contends that this failure to object rendered his counsel's performance deficient, which resulted in prejudice.

This Court need not address whether Ruzzo's performance was deficient[4], because even if it was, Wallace has offered nothing more than mere speculation that he suffered prejudice. Specifically, Wallace asserts that if the toxicologist had testified he would have been able to establish that the victim was the aggressor, was "out of his mind," and was "hell-bent on hurting or killing" him. (Doc. 1, at 12-13). Not only is there no evidence suggesting this would have been the case, but Ruzzo was able to elicit testimony from Dr.

---

[4] Counsel's performance is presumed reasonable, and Wallace has not alleged anything to rebut that presumption. *See Thomas v. Varner*, 428 F.3d 491, 499-500 (3d Cir. 2005). Specifically, counsel has not alleged any reason to believe that the non-objection was not part of a reasonable trial strategy.

Pascucci that an individual with an elevated blood alcohol level was "possibly" more aggressive than normal. Thus, it appears the information sought by Wallace from the toxicologist–at least in part–was produced during the cross-examination of Dr. Pascucci. Additionally, Wallace seems to argue that a violation of the Confrontation Clause results in prejudice *per se.* This too is incorrect.[5]

This Court will find that Wallace has failed to establish that there was a "reasonable probability" that the outcome would have been different but for the lack of objection by Ruzzo. Accordingly, his Petition for a Writ of Habeas Corpus will be denied.

(2)     Failure to Elicit Character Testimony

Next, Wallace objects to Magistrate Judge Schwab's recommendation that trial counsel's failure to call character witnesses does not render counsel's performance ineffective. Specifically, Wallace claims that counsel should have called his father, brother and aunt to testify about his "non-aggressive and peaceful character." (Doc. 25, at 4-5.) However, the Superior Court was correct when it concluded that counsel's decision not to call a character witness did not render his performance ineffective. Thus, the Superior Court's decision was not "contrary to" the *Strickland* standard, did not involve an "unreasonable application" of *Strickland*, and did not result "in a decision that was based

---

[5]     There are a limited number of circumstances under which a presumption of prejudice may be applied, but none of these circumstances exist in the record before this Court. *See United States v. Cronic*, 466 U.S. 648 (1984) (establishing a narrow exception to the *Strickland* standard permitting a presumption of prejudice); *Davenport v. Diguglielmo*, 215 F. App'x 175, 182 (3d Cir. 2007) (identifying three situations in which courts should apply the prejudice presumption: (1) where there is a "complete denial of counsel"; (2) where counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; (3) where "counsel could not render competent assistance.") Put simply, no court has held that failing to object, absent additional circumstances, amounts to *per se* prejudice.

10

on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. §2254(d).

When "evaluating counsel's performance [courts] are 'highly deferential' and 'indulge in a strong presumption' that, under the circumstances, counsel's challenged actions 'might be considered sound trial strategy." *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 689). And, a claim that counsel was ineffective due to a failure to call a witness is "precisely the type of strategic decision which the court in *Strickland* held to be protected from second-guessing." *Sanders v. Trickey*, 875 F.3d 205, 212 (8th Cir. 1989); *see also Henderson v. DiGuglielmo*, 138 Fed. App'x 463, 469 (3d Cir. 2005); *see also Philson v. Barbo*, 77 Fed. App'x 123, 127 (3d Cir. 2003); *LaFrank v. Rowley*, 340 F.3d 685 (8th Cir. 2003); *Castillo v. Matesanz*, 348 F.3d 1, 15 (1st Cir. 2003). In fact, courts have specifically held that the failure to call a character witness on behalf of the defendant, even if the defendant has requested such a witness, does not alone amount to ineffective assistance. *See United States v. DeJesus*, 57 Fed. App'x 474, 478 (2d Cir. 2003); *see also Sanchez v. Tennis*, No. 04-cv-4005, 2005 WL 645926, at *9 (E.D. Pa. Mar. 18, 2005) (report and recommendation adopted).

Here, Wallace claims he instructed Ruzzo to call a number of character witnesses. Ruzzo, however, did not call a single character witness. According to Ruzzo, no such witness was called because doing so would have opened the door for the admission of Wallace's resisting arrest conviction. (Doc. 13, at 80.) This concern was reasonable. *See United States v. Logan*, 717 F.2d 84, 88 (3d Cir. 1983) ("By introducing evidence of his good character, the defendant throws open the entire subject of his character and, consequently allows the prosecutor to penetrate a previously proscribed preserve, to produce contrary evidence, to cross-examine the defendant's character witnesses and to probe the extent and source of their opinions."). In other words, counsel made a strategy

11

decision: the rebuttal evidence to good character testimony would do more harm than good. *See Sanchez*, 2005 WL 645926, at *9. Further, when faced with a similar dilemma during his PCRA hearing, Wallace made the same decision: no character witnesses were called on his behalf. (Doc. 13, at 82.)

Because the facts presented here offer no justification to overcome the strong presumption that counsel's decision was a part of a larger trial strategy, Wallace's Petition will be denied on this ground.

## B. Pennsylvania's "Stand Your Ground" Amendment

Next, Magistrate Judge Schwab recommends that Wallace's Petition be denied because Pennsylvania's "Stand Your Ground" Amendment was not codified until 2011 and was never deemed to apply retroactively by the Pennsylvania Supreme Court or the Pennsylvania legislature. Wallace objects to this recommendation because he believes the failure of the state court to apply Pennsylvania's Stand Your Ground Amendment offends his federal due process rights. However, this Court will adopt Magistrate Judge Schwab's recommendation because Wallace's position is at odds with the Supreme Court's longstanding position that "the federal constitution has no voice upon the subject" of retroactivity. *Great Northern R.R. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 364 (1932); *see also Warren v. Kyler*, 422 F.3d 132, 136 (3d Cir. 2005).

The Superior Court held that the "Stand Your Ground" Amendment was not to be applied retroactively to Wallace's conduct for two reasons. First, the Superior Court explained that Pennsylvania "recognizes a presumption against retroactive application of [a] statute and a law amending a statute." *Commonwealth v. Wallace*, No. 241 MDA 2013, 2014 WL 10988483, at *3 (Pa. Super. Jan. 29, 2014) (citing *Commonwealth v. Estman*, 868 A.2d 1210, 1211-12 (Pa. Super 2005), aff'd, 915 A.2d 1191 (Pa. 2007)). Specifically, this presumption stems from a state statute that notes: "no statute shall be construed to be

retroactive unless clearly and manifestly so intended by the General Assembly." 1 Pa. C.S. §1926. Since the "Stand Your Ground" Amendment had not been explicitly rendered retroactive by the General Assembly, the Superior Court held it was not to be applied retroactively, and therefore did not apply to Wallace's conduct. Second, the Superior Court explained that legislation that defines substantive rights are not applied retroactively in Pennsylvania. *Wallace*, 2014 WL 10988483, at *3-4 (citing *Commonwealth v. Estman*, 915 A.2d at 1194-96). The "Stand Your Ground" Amendment defined an individual's right to use force, and thus defined a substantive right as opposed to a procedural right. As such, the Superior Court refused to apply the Amendment to Wallace's Conduct.

The decision of the Superior Court will not be disturbed because the Third Circuit has repeatedly held that a state is under no federal constitutional obligation to apply its own law retroactively. *See, e.g.*, *Kyler*, 422 F.3d at 141; *Fiore v. White*, 149 F.3d 221, 224-25 (1998); *see also Gladney v. Pollard*, 799 F.3d 889, 897-98 (7th Cir. 2015) ("States are free to choose whether a change in state law is retroactive without running afoul of the federal Constitution."). In *Warren v. Kyler*, a habeas-petitioner challenged the decision of the Pennsylvania Superior Court not to retroactively apply a decision of the Pennsylvania Supreme Court during his collateral proceedings. *Kyler*, 422 F.3d at 133. The Circuit refused to undertake a review of petitioner's retroactivity challenge because "nothing in the federal Constitution compels a State to apply its criminal decisions retroactively." *Id.* at 141. Additionally, the Circuit believed it "lack[ed] the authority to review a state's own application of its retroactivity principles" due to the Supreme Court's pronouncement that "[f]ederal habeas corpus relief does not lie for errors of state law." *Id.*; *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *see also Houston v. Dutton*, 50 F.3d 381, 385 (6th Cir. 1995) ("No federal issues are implicated and no federal question is presented in determining whether a change in state law is to be applied retroactively.") Specifically, the *Kyler* Court explained that the

13

principle flowing from *Estelle* "requires [that federal courts] heed the state court's application of its own retroactivity principles." *Kyler*, 422 F.3d at 137.

For these reasons, Magistrate Judge Schwab's R&R will be adopted with respect to this claim and Wallace's Petition will be denied.

**C.     Post-Arrest Silence**

Finally, Wallace objects to Magistrate Judge Schwab's recommendation that his Petition be denied because the trial court did not err when it refused to declare a mistrial after the prosecutor referenced, albeit tangentially, Wallace's post-arrest silence. Wallace contends that the prosecutor's use of his post-arrest silence constituted a violation of the Fourteenth Amendment's Due Process Clause. The applicable federal precedent governing the use of a defendant's post-arrest silence is *Doyle v. Ohio*, 426 U.S. 610 (1976).

In *Doyle*, the Court made clear that the Fourteenth Amendment's Due Process Clause bars state prosecutors from using a defendant's post-arrest, post-*Miranda* silence to impeach a his testimony. *Id.* at 618-19. Further, the Court explained that because the *Miranda* warnings carry an implicit assurance "that silence will carry no penalty . . . it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* In other words, "it does not comport with due process to permit the prosecution during the trial to call attention to [a defendant's] silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony." *Id.* at 619 (White, J., *concurring*).

The principle set in *Doyle* is not contravened when a defendant's post-arrest silence was not "submitted to the jury as evidence from which it was allowed to draw any permissible inference." Greer v. Miller, 483 U.S. 756, 765 (1987). In *Greer v. Miller*, a

14

defendant testified on direct examination that he was not involved in the crimes alleged. 483 U.S. at 758-60. On cross-examination, the prosecutor pointedly asked the defendant, "Why didn't you tell this story to anyone when you were arrested?" *Id.* at 759. Defendant's counsel objected, and the objection was sustained. *Id.* Further, the jury was instructed to ignore the question. *Id.* No mistrial followed. The Supreme Court agreed that no mistrial was warranted because while the question may have implicated defendant's post-arrest silence, the jury had specifically been instructed to ignore the question, and the defendant was never required to answer the question.

Here, Wallace claims that *Doyle* was violated during the testimony of Corporal Gerald Williams, a trooper with the Pennsylvania State Police. During Williams' testimony, the prosecutor asked: "On December 20, 2007, [the day Wallace was arrested] did you have an opportunity to interview Jabbar Wallace?" Williams answered, "[Wallace] was present at the station. I had the opportunity, but there was no interview conducted." The prosecutor began to ask a follow up question, "And can I ask why there was no–," but was interrupted by an objection from Ruzzo. Following the objection, the trial court held a lengthy discussion at side bar where counsel made his concerns about a potential *Doyle* violation known and moved for a mistrial. While the trial court denied Ruzzo's motion for a mistrial, it did sustain the original objection and prohibited the prosecutor from asking the follow up question. Additionally, the jury was specifically instructed to disregard the question at issue. Because the jury was specifically instructed to disregard the offending statement, there is no *Doyle* violation here, and Wallace's Petition may be denied on this ground.

Even if a *Doyle* violation had occurred, the fact that the jury heard half of a question that may have implicated Wallace's post-arrest silence does not rise above the level of harmless error. *See Brecht v. Abrahamson*, 507 U.S. 619, 629 (1993) (explaining that a *Doyle* violation is subject to harmless-error analysis) In order for a trial error to support the

15

grant of a Writ of Habeas Corpus, that error must have had "a substantial and injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*, 532 U.S. 782, 795 (2001) (quoting *Brecht*, 507 U.S. 619, 637 (1993)). In fact, to rise above harmless error, "there must be more than a reasonable probability that the error was harmful." *Davis v. Ayala*, 135 S. Ct. 2187, 2197-98 (2015) (citing *Brecht*, 507 U.S. at 637). Wallace has offered no evidence, or even a cogent allegation, that there was more than a reasonable probability that the alleged *Doyle* violation was harmful.

For these reasons, Wallace's objection is baseless and Magistrate Judge Schwab's R&R will be adopted on this ground.

### D. Claims Without Objection

Finally, Magistrate Judge Schwab noted that Wallace's claim that his conviction was against the weight of the evidence is not cognizable under Section 2254. Wallace has not objected to this recommendation. Because Magistrate Judge Schwab's recommendation is absent plain error, it will be adopted. *See Henderson*, 812 F.2d at 878.

## IV. Conclusion

For the above stated reasons, Magistrate Schwab's Report and Recommendation will be adopted and Wallace's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254(d) will be denied. Further, in proceedings brought pursuant to 28 U.S.C. § 2254, an applicant cannot appeal to the circuit court unless a certificate of appealability has been issued. *See* 3d Cir. L.A.R. 111.3(b) (2011). Under 28 U.S.C. § 2253(c)(2), a court may not issue a certificate of appealability unless "the applicant has made a substantial showing of the denial of a constitutional right." Restated, a certificate of appealability should not be issued unless "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As reasonable jurists would not disagree with the resolution of Wallace's § 2254 petition,

a certificate of appealability will not issue.

An appropriate order follows.

January 8, 2018
Date

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge